<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| STACY GEORGAKLIS,<br><br>                Plaintiff,<br><br>      v.<br><br>TOWNSHIP OF TOMS RIVER, *et. al.*,<br><br>              Defendants. | Civil Action No. 24-5708 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on a Motion to Dismiss Plaintiff Stacy Georgaklis's ("Plaintiff") Complaint (ECF No. 1) filed by Defendants Louis Amoruso ("Amoruso"), Joann Benson ("Benson"), Arthur Gallagher ("Gallagher"), Maurice Hill ("Hill"), and the Township of Toms River (the "Township") (collectively, "Defendants") (ECF No. 14). Plaintiff opposed (ECF No. 17), and Defendants replied (ECF No. 21). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' Motion is granted.

I.      <u>**BACKGROUND**</u>

    A.      **Factual Background**[1]

        *1.      Allegations Related to Sex Discrimination and Equal Pay*

Plaintiff began working full-time for the Township on June 16, 2014, as an Administrative Assistant. (Compl. ¶ 13, ECF No. 1.) In 2016, Plaintiff was earning $45,500 in this role. (*Id.* ¶ 33.)

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

On January 1, 2017, Plaintiff transitioned to take on three new roles: Records Manager, Records Supervisor, and Public Information Officer. (*Id.* ¶¶ 14, 16.) Plaintiff took over Records Manager from Greg Horback, who had received a salary of $68,000 in that position. (*Id.* ¶¶ 14-15.) At the end of 2019, a new administration was set to take over leadership in the Township, and the incoming Mayor, Hill, sent a letter to all confidential employees, including Plaintiff, encouraging them to reapply for their current positions in his new administration. (*Id.* ¶ 17.) Plaintiff thereafter reapplied for her current positions. (*Id.* ¶ 18.)

Plaintiff was initially advised that her "job duties would remain the same under the new administration," but at the end of January 2020, then-Assistant Business Administrator, Amoruso, told Plaintiff that she would no longer be the Records Supervisor or Public Information Officer. (*Id.* ¶¶ 19-20.) Instead, she was given the role of Records Manager/Council Liaison, which Plaintiff was told was a promotion even though her hourly rate was reduced. (*Id.* ¶¶ 24, 30.) Plaintiff took over the role of Council Liaison from Mark Dykoff, who was hired on January 7, 2019, at a salary of $63,000. (*Id.* ¶ 27.) Despite this new job title, Plaintiff was told to also continue performing the job duties of her former roles—Records Supervisor and Public Information Officer. (*Id.* ¶ 28.)

About two years later, on January 1, 2022, Hill hired Gallagher as an Administrative Assistant at a salary of $89,000, while Gallagher was also acting as Hill's campaign manager. (*Id.* ¶¶ 31-32, 38.) At the same time, Plaintiff's salary was $69,500. (*Id.* ¶ 34.) Six months later, Gallagher received a $10,000 raise, bringing his salary to $99,000. (*Id.* ¶¶ 35-36.) In July 2023, one year later, Gallagher received another $10,000 raise, and Plaintiff only received a $1,390 raise. (*Id.* ¶ 57.) Plaintiff alleges that she "was not receiving equal pay for performing the same job functions for [the Township]." (*Id.* ¶ 58.) Plaintiff further alleges that Gallagher refused to "train

on the website" and perform his job duties because he could instead "have [Plaintiff] do it for [him]." (*Id.* ¶¶ 75-76.)

The Township received a payment of $5,172,671.50 in American Rescue Plan funding in May 2021 and June 2022, respectively, and the Township paid $1,476,700 as "retention pay" to certain employees from January 2022 through July 2023. (*Id.* ¶¶ 39-41, 44). There was no mechanism in place to determine how much money employees would receive, but the maximum amount given to any employee was $25,000. (*Id.* ¶¶ 42, 45.) Of the 219 employees that received retention pay, "only four women received the full amount of $25,000." (*Id.* ¶ 48.) Plaintiff received a total of $11,500 in retention pay, and Gallagher received a total of $25,000 in retention pay. (*Id.* ¶¶ 55-56.)

On May 11, 2022, Plaintiff attended a Township meeting where a female police officer was being sworn in. (*Id.* ¶¶ 71, 73.) Plaintiff witnessed Gallagher say to the Department Head of the Town's Zoning and Construction Office, "[m]an, I wouldn't mind getting arrested by her." (*Id.* ¶¶ 72, 74.) On June 1, 2023, Plaintiff "read a deposition transcript of Laura Picurro in the matter of *Linda Valeri v. Township of Toms River, et al.*" in which "Picurro testified that Plaintiff . . . was part of the mayor[']s 'pussy posse' according to . . . Benson." (*Id.* ¶¶ 88-89.) Plaintiff alleges that this statement caused her "great embarrassment and humiliation." (*Id.* ¶ 90.)

### 2.    *Allegations Related to Employee Training*

Plaintiff alleges that the Township is "required to certify to [Public Employer Risk Management Association, Inc. ("PERMA")] Riska [sic] Management Services that they have trained managerial and supervisory personnel yearly." (*Id.* ¶ 92.) While the Township was PERMA recertified in October of 2021, prior to April 2022, Hill had not received any training since 2018, Benson had not received any training since April 11, 2017, and Amoruso had not

3

received any training since November 29, 2018. (*Id.* ¶¶ 93-96.) Plaintiff further alleges that "Amoruso and . . . Benson [never] received sexual harassment and discrimination training." (*Id.* ¶ 97.)

### 3.    *Allegations Related to Political Retaliation and Free Speech*

Plaintiff alleges the following incidents to support her allegations related to political retaliation and free speech. On June 6, 2022, Hill said to Plaintiff: "Don't forget to vote tomorrow. Do the right thing, Column B all the way." (*Id.* ¶ 79.) Plaintiff alleges that she felt that Hill interfered with her right to political affiliation because Hill knew that she would not vote for him. (*Id.* ¶¶ 80-81.) Indeed, Plaintiff's husband is a known ally of the Toms River Republican Chairman, George Gilmore, who did not support Hill in the 2023 Republican primary. (*Id.* ¶¶ 86-87.) Plaintiff further alleges she was "being demeaned and threatened" when Hill invited Plaintiff to the first event of his re-election campaign in mid-August 2022, which Hill knew Plaintiff would not support or attend. (*Id.* ¶¶ 60-62.) In March 2023, Gallagher stated on a phone call to Hill that "[Plaintiff's] hubby fancies himself as the new County Republican Chair[,]" and brought up Plaintiff's salary and "the money [the Township] would save if she was gone." (*Id.* ¶¶ 82-85.)

The Township's Political Activity Policy requires employees to "maintain a clear separation between their official responsibilities and their political affiliation" and prohibits employees "from engaging in political activities while performing their public duties and from using Township time[.]" (*Id.* ¶¶ 67-68.) At an unspecified time, Plaintiff believes Hill violated this policy when he requested "an interactive map on the front page of the website due to 'misinformation by a candidate and his social media followers.'" (*Id.* ¶ 69.) Plaintiff alleges that she "feared additional retaliation" if she reported Hill for this violation of Township policy. (*Id.*

¶ 70.) In sum, Plaintiff claims that "[b]y failing to attend political events at the request of . . . Hill, Plaintiff's constitutionally protected conduct was a substantial and motivating factor for the adverse employment actions she faced." (*Id.* ¶ 128.)

### B.    Procedural Background

Plaintiff commenced this action on April 29, 2024, bringing seven causes of action: (1) violation of New Jersey's Law Against Discrimination ("NJLAD"); (2) retaliatory harassment under NJLAD; (3) reprisal under NJLAD; (4) violation of New Jersey's Equal Pay Act; (5) a *Monell* claim under 42 U.S.C. § 1983 ("Section 1983"); (6) violation of the New Jersey Civil Rights Act; and (7) defamation. (*See id.* ¶¶ 99-134.) On June 21, 2024, Defendants moved to dismiss the Complaint. (Defs.' Moving Br., ECF No. 14.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 17), and Defendants replied (Defs.' Reply Br., ECF No. 21).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

---

[2] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. DISCUSSION

### A. Federal Claim Under 42 U.S.C. § 1983

Plaintiff brings a Section 1983 claim against the Township, alleging that "Defendants had developed and maintained policies and[] customs exhibiting deliberate indifference to the constitutional rights of persons in the [Township]."[3] (Compl. ¶ 120.) Specifically, Plaintiff alleges that "[i]t was the policy and/or custom of the [Township] and the other Defendants herein to inadequately and improperly supervise and train its employees, to inadequately and improperly investigate complaints made by employees and to pay women for the same work less than what men were being paid." (*Id.* ¶ 121.) The Court considers these allegations below.

---

[3] While Plaintiff's allegations in Count V of the Complaint are at times phrased as brought against all Defendants, the Court understands Plaintiff to bring Count V against the Township only. (*See* Compl. ¶¶ 116-23.) The Court reaches this conclusion because of the title of the Count: "Deprivation of Federally Protected Rights [U]nder 42 U.S.C.A. § 1983 – Monell Claim," as a *Monell* claim can only be brought against a municipality. The final paragraph of the Count also supports the Court's reading because it only seeks remedies against the Township, rather than all Defendants. (*Compare id.* ¶ 123 ("[Wherefore], Plaintiff demands judgment against Defendant, the Township of Toms River . . ."), *with id.* ¶¶ 102, 104, 106, 115, 128, 134 ("[Wherefore], Plaintiff demands judgment against Defendants . . .").)

### 1.    *Statute of Limitations*

In general, "[a] statute of limitations defense is an affirmative defense that a defendant must usually plead in his [or her] answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015). A statute of limitations defense, however, can also be raised via a Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). The Court may only grant such a motion "if the face of the complaint demonstrates that [Plaintiff's] claims are untimely." *Id.* (quotations and citations omitted). The Court therefore first addresses Defendants' arguments that certain actions alleged by Plaintiff are time-barred from forming the basis of her Section 1983 claims. (Defs.' Moving Br. 13-16.)

Section 1983 claims are subject to New Jersey's two-year statute of limitations on personal injury actions. *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing N.J. STAT. ANN. § 2A:14-2; *Montgomery v. De Simone*, 159 F.3d 120, 126 n.4 (3d Cir.1998)). Here, the Complaint was filed on April 29, 2024. (*See generally* Compl.) Thus, the two-year statute of limitations for Section 1983 claims in New Jersey bars claims based on actions predating April 29, 2022. Yet, the Complaint contains allegations dating back at least as early as January 2020. (*See id.* ¶¶ 18-30.)

In Plaintiff's brief, but not her Complaint, she invokes the continuing violations doctrine. (Pl.'s Opp'n Br. 11-15.) Plaintiff argues that there was a "pattern of conduct [that] makes [her] claims for disparate treatment, which are based on both gender and political affiliation, timely." (*Id.* at 14.) The continuing violations doctrine dictates that "[w]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d

232, 236 (3d Cir. 2014) (quoting *Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners*, 927

F.2d 1283, 1295 (3d Cir.1991)). "[I]n such an instance, the court will grant relief for the earlier

related acts that would otherwise be time barred." *Id.* (quoting *Brenner*, 927 F.2d at 1295). The

continuing violations doctrine is "often applied [] in employment discrimination cases, where only

in retrospect will a plaintiff recognize that seemingly unconnected incidents were, in fact, part and

parcel of a larger discriminatory pattern." *Id.* at 236. To determine if the continuing violations

doctrine is applicable in a Section 1983 action, the court must consider: "(1) whether the violations

are part of the same subject matter[;] and (2) whether the violations occurred frequently." *Cibula

v. Fox*, 570 F. App'x 129, 135 (3d Cir. 2014) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d

157, 165-67 (3d Cir. 2013)).

The first factor, subject-matter, weighs against applying the continuing violations doctrine

here because Plaintiff brings her Section 1983 claim alleging different types of underlying

constitutional violations. (*See generally* Compl.) Specifically, Plaintiff brings claims for sex

discrimination and political retaliation under Section 1983. (*Compare id.* ¶¶ 56-58, *with id.*

¶¶ 79-81); *see Evans v. Gloucester Township*, 124 F. Supp. 3d 340, 351 (D.N.J. 2015) (finding

that plaintiff's allegations "d[id] not constitute the same type of discrimination because they

involve allegations of political discrimination or retaliation, false arrest, defamation, as well as

gender discrimination").

The Court further finds that Plaintiff has failed to adequately allege that Defendants'

conduct consisted of "more than . . . isolated or sporadic acts." *Cibula*, 570 F. App'x at 135-36

(quoting *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 730 F.3d 291,

292 (3d Cir. 2013)). Plaintiff argues that she faced gender discrimination through "[t]he continual

restructuring of [her] position, which commenced in January 2020 and continued throughout her

employment" so that Plaintiff performed the work of three people and was still paid less than the two men who previously performed those same jobs. (Pl.'s Opp'n Br. 14.) The Complaint, however, does not include facts indicating that Plaintiff's position was subject to "continual restructuring." Rather, Plaintiff alleges that in January 2020 she was given a new role and had to continue to perform her previous press or social media matters since that time. (*See* Compl. ¶¶ 20-30, 31-36, 63-66.) This allegation only includes an isolated act—Plaintiff getting her new role in January 2020. In addition, the Complaint also only alleges a few specific incidents of political retaliation. (*See id.* ¶¶ 37-56, 59-61, 75-76, 79-81); *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 120 (D.N.J. 2017) (explaining that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988))). As such, Plaintiff has not demonstrated that the continuing violations doctrine applies to her claims, and the Court considers only those acts alleged to have occurred after April 29, 2022. *See Zupko v. County of Ocean*, No. 22-5872, 2023 WL 3689570, at *3 (D.N.J. May 26, 2023) (finding the continuing violations doctrine did not apply where the plaintiff only alleged "a handful of specific incidents of sexual harassment"). Plaintiff, however, will be granted leave to file an amended complaint.

### 2.    *Section 1983:* Monell *Claim*

To state a cognizable claim under Section 1983, a plaintiff is required to adequately allege: (1) the plaintiff was deprived of a "right or privilege secured by the Constitution or the laws of the United States" and (2) the plaintiff was deprived of her rights by a person acting under the color of state law. *Williams v. Borough of W. Chester*, 891 F.2d 458, 464 (3d Cir. 1989). Under Section 1983, however, "a municipality may not be held liable . . . solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather, the Supreme Court, in *Monell*

*v. New York City Department of Social Services*, 436 U.S. 658 (1978), put forth a test to determine whether a municipality may be held liable under Section 1983. A successful *Monell* claim must adequately allege: "(1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom." *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 658).

As an initial matter, a claim brought against a municipality under Section 1983 can only be successful where the "municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694). Municipalities may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under [Section] 1983." *Monell*, 436 U.S. at 694. "A plaintiff may establish a custom . . . by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Township*, 478 F.3d 144, 155-56 (3d Cir. 2007) (internal quotation marks and citation omitted). "[A] plaintiff must show that an official who has the power to make policy is responsible for . . . acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

Here, Plaintiff does not identify a policymaker or decisionmaker whose deliberate decisions established a specific policy or custom that could give rise to municipal liability under Section 1983. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Plaintiff conclusorily states that "Defendants had developed and maintained policies and/or customs

10

exhibiting deliberate indifference." (Compl. ¶ 120.) Plaintiff similarly does not identify a policymaker or decisionmaker whose lack of action resulted in the acquiescence of a specific policy or custom that could give rise to municipal liability under Section 1983. *See, e.g., Simmons v. City of Phila.*, 947 F.2d 1042, 1064 (3d Cir. 1991) (stating that neither an unconstitutional municipal policy nor custom "[can] be established absent conscious decision[-]making or acquiescence in a longstanding custom or practice on the part of a policymaker" (citing *Andrews*, 895 F.2d at 1481)). Rather, Plaintiff conclusorily states that "Defendants have repeatedly and knowingly failed to enforce the laws of the United States, the State of New Jersey and the policies and procedures of the Township of Toms River . . . ." (Compl. ¶ 119.) Without more factual allegations concerning which Defendants made the deliberate decision about, or acquiesced to, which specific policies and/or customs, this allegation is a "[t]hreadbare recital[]" that the Court does not accept as true on a motion to dismiss. *Iqbal*, 556 U.S. at 678.

The Court's analysis does not end there, however, as the Third Circuit has found that "a municipality's failure to properly train its employees and officers can create an actionable violation . . . under § 1983." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). The "municipality's failure to train . . . must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton*, 489 U.S. at 388). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Brown*, 520 U.S. at 410). It follows that a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Brown*, 520 U.S. at 409) (stating that when

11

policymakers "are on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights, the [municipality or government entity] may be deemed deliberately indifferent if the policymakers choose to retain that program"). "At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question." *Greene v. Lance*, No. 21-14399, 2022 WL 1241309, at *3 (D.N.J. Apr. 27, 2022) (citing *Est. of Roman*, 914 F.3d at 798).

"A plaintiff must also allege that the policy or custom was the proximate cause of [her] injuries." *Est. of Roman*, 914 F.3d at 798 (internal quotations omitted). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz*, 915 F.2d at 850 (citation omitted). Importantly, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [Township], for the [municipal employee's] shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. Notably, a plaintiff's claim is at its most "tenuous" when it "turns on [an allegation of] a failure to train." *Day v. Jackson Township*, No. 10-4011, 2013 WL 394151, at *12 (D.N.J. Jan. 30, 2013) (quoting *Connick*, 563 U.S. at 61).

Here, Plaintiff fails to adequately allege deliberate indifference, so her failure to train claim must be dismissed. Plaintiff alleges that the Township was "required to certify to PERMA Riska [sic] Management Services that they have trained managerial and supervisory personnel yearly," but prior to April 2022, Hill, Benson, and Amoruso had not received any training since 2017-2018, and Amoruso and Benson never received sexual harassment and discrimination training. (*See*

12

Compl. ¶¶ 92-97.) Plaintiff contends that "Amoruso and . . . Benson believed that their actions would not be properly monitored by supervisory personnel and that misconduct in connection with employment matters would not be investigated or sanctioned but – would be tolerated." (*Id.* ¶ 122.)

While it appears to the Court that Plaintiff successfully identifies a problem with the Township's training, she fails to plead that this problem rises to the level of deliberate indifference. Plaintiff makes a bare recitation that Defendants "exhibit[ed] deliberate indifference" through their policies and/or customs. (*Id.* ¶ 120.) The Complaint, however, is devoid of any facts suggesting that policymakers were on notice that there was a "pattern of similar constitutional violations" and that they failed to take actions to prevent future violations. *See Est. of Roman*, 914 F.3d at 798-99. For example, Plaintiff does not allege that the Township had received and subsequently failed to respond to previous reports of sexual discrimination or political retaliation.[4] Without an allegation concerning a pattern of constitutional violations, Plaintiff does not allege that the Township was on notice that the constitutional rights of its employees were being violated. *See Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 734 (D.N.J. 2015) (dismissing failure to train claim where the plaintiff did not "show that [d]efendants were 'on notice that, absent additional specified training, it was "highly predictable"' that employees would make decisions that would violate constitutional rights" (citing *Connick*, 563 U.S. at 71)).

Plaintiff also fails to allege that the lack of training causally led to her alleged injury. Courts have stated that it will not "suffice to prove that an injury or accident could have been avoided if

---

[4] The Court notes that Plaintiff included a reference to the matter of *Linda Valeri v. Township of Toms River, et al.* (Compl. ¶¶ 88-89.) While this case may have included claims involving sexual discrimination or political retaliation against the Township, Plaintiff does not allege as much and does not point to this case as evidence of a pattern of constitutional violations. Instead, Plaintiff only relies on this case for the proposition that "Picurro testified that Plaintiff . . . was part of the mayor[']s 'pussy posse' according to . . . Benson." (*Id.* ¶ 89.)

an officer had had better or more training," especially because even "adequately trained officers occasionally make mistakes." *See City of Canton*, 489 U.S. at 391; *see also Lockhart*, 170 F. Supp. 3d at 733 (noting that "a [Section] 1983 claim for failure to train requires some allegations from which the court can infer that the defendant failed to offer some specific training that would have prevented the deprivation of plaintiff's constitutional rights" (citing *Canton*, 489 U.S. at 390)). As such, Plaintiff fails to state a *Monell* claim under Section 1983, and Count V is, accordingly, dismissed.

    **B.**    **State Law Claims**

In Counts I-IV and VI-VII, Plaintiff brings state law claims. (Compl. ¶¶ 99-115, 124-34.) Where all federal claims against a party have been dismissed from an action, "the district court may, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims." *Rothman v. City of Northfield*, 716 F. Supp. 2d 369, 373 (D.N.J. 2010) (quoting *Lentz v. Mason*, 961 F. Supp 709, 717 (D.N.J. 1997)). As the Court has dismissed Plaintiff's Section 1983 claim—Plaintiff's only federal claim—the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**IV.**    **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is granted. The Court will enter an Order consistent with this Memorandum Opinion.

 

                                                           _____
                                                           MICHAEL A. SHIPP
                                                           UNITED STATES DISTRICT JUDGE